NIEBES, APPELLEE, *v.* CRESTLINE AERIE No. 859, FRATERNAL ORDER OF EAGLES, ET AL., APPELLANTS.

(No. 1485—Decided November 12, 1952.)

*Mr. Leo J. Scanlon* and *Mr. J. D. Sears,* for appellee.
*Messrs. Myers & Spurlock,* for appellants.

GUERNSEY, J.   This is an appeal on questions of law from a judgment of the Common Pleas Court of Crawford County in an action wherein the appellee, Rose Niebes, was the plaintiff, and the appellants, Crestline Aerie No. 859, Fraternal Order of Eagles, Crestline, Ohio, and Frank Yakubek, L. J. Simoni, A. P. Sonner, E. N. Jacobs, and M. V. Snyder, as trustees of Crestline Aerie No. 859, Fraternal Order of Eagles, were defendants.   The action is one for damages for injuries allegedly sustained by plaintiff while she was a guest and invitee on the premises of defendants, alleged to have been proximately caused by the negligence of the defendants in their failure to maintain a stairway on said premises in proper repair.

The cause was tried to a court and jury and the jury returned a verdict for $5,000 in favor of the plaintiff and against the defendants.   Judgment was

duly entered on said verdict. This is the judgment from which this appeal is taken.

Such of the evidence in the cause as it is necessary to consider in order to determine the assignments of error will be hereafter mentioned in connection with the assignment of error to which such evidence relates.

The defendants, appellants herein, have assigned error in the following particulars, to wit:

1. The court erred in submitting the case to the jury and in not directing a verdict in favor of the defendants on motion of the defendants made at the close of plaintiff's evidence and renewed at the close of all the evidence.

2. The court erred in submitting to the jury the question of whether or not plaintiff was an invitee on the night of the injury when the record contains no evidence that she was an invitee at such time.

3. The court erred in his charge to the jury in instructing it on the question of licensee-invitee relationship of plaintiff to defendants.

4. The verdict and judgment thereon herein appealed from are against the weight of the evidence and contrary to law.

5. The verdict and judgment thereon herein appealed from are not supported by any evidence and are contrary to law.

6. The court erred in his charge to the jury in regard to the duties of the defendants in regard to care of their stairways.

7. The court erred in his charge to the jury in instructing it regarding constructive knowledge of defects in the stairway when the petition merely charged actual knowledge.

These assignments will be considered in the order mentioned.

1. The first assignment of error raises the question

as to whether there is any evidence in the record for review tending to prove that the defendants owed any duty of care toward the plaintiff or were negligent in any of the respects charged in the petition, proximately causing plaintiff's injuries.

An inspection of the record discloses that a number of witnesses, including the plaintiff, testified that the plaintiff, whose husband was a member of defendant lodge, stumbled and fell while descending the stairway leading from the second floor to the first floor on the premises possessed by defendant lodge and used by it for lodge purposes, such purposes including the maintenance of a ladies' auxiliary of such lodge, of which auxiliary the plaintiff was a member.

As a result of said fall plaintiff sustained serious injuries.

There is also the testimony of a number of witnesses that the metal bindings or mouldings along the edges of the steps of said stairway at the place where plaintiff stumbled and fell were in a state of disrepair. The state of disrepair testified to was of such a character that the jury could infer that it was the proximate cause of plaintiff's injuries.

There were also witnesses who testified that such a state of disrepair had continuously existed during several weeks prior to the time of plaintiff's injuries, from which testimony the jury could infer that the defendants had knowledge of such condition of disrepair.

If the defendant lodge owed any duty of care to the plaintiff the evidence above mentioned was sufficient to require the court to submit to the jury the issues of negligence on the part of the defendant lodge, proximate cause, and damages.

What duty of care, if any, the defendant lodge owed the plaintiff is dependent upon the legal capacity in

which the plaintiff was upon the premises of the defendant lodge at the time and place of her injuries, which is determinable from the following facts admitted in the pleadings or appearing in evidence in the cause.

The defendant lodge is an unincorporated nonprofit fraternal organization and association made up of a voluntary membership exceeding 600 male persons, operating in the village of Crestline, Ohio, being so organized and so functioning under a charter granted to it by its incorporated national parent lodge, the Grand Aerie of the Fraternal Order of Eagles. The other named defendants are members and trustees of said Crestline Aerie No. 859, Fraternal Order of Eagles.

At all the times mentioned in the petition and prior thereto the defendant lodge was in possession of a three-story building on East Bucyrus street in the village of Crestline, Ohio, of which it had the exclusive control and which it used for lodge purposes and other purposes incidental thereto.

Prior to the times mentioned in the petition certain of the wives and daughters of the members of the defendant lodge association formed a voluntary association known and operating as a ladies' auxiliary to said lodge association.

At all times said auxiliary was a separate entity from said lodge association and said lodge association was a separate entity from said ladies' auxiliary.

The ladies' auxiliary was in existence at all the times mentioned in the petition.

Said building, possessed by said lodge and controlled and occupied by it, had at its entrance on said East Bucyrus street, several steps ascending from the sidewalk to a vestibule on the ground floor thereof. Upon the ground floor doors led from said vestibule to a bar and grill and separate rooms for men and

women where drinks and lunch were served. It does not appear that the ground floor of the building was in use for any other purpose. From the vestibule on the ground floor there was an enclosed stairway ascending to a landing on the second floor from which separate doors opened into a room used by the ladies' auxiliary for their meetings and another room which was used as an office by the secretary of the lodge. It does not appear that the second floor of the building was in use for any other purpose.

From the landing on the second floor there was a stairway leading to the third floor. The third floor was used by the defendant lodge as a meeting place and at certain times was also used by defendant lodge for the purposes of conducting bingo games and serving dinners to the members and their guests.

The defendant lodge permitted or acquiesced in the use by the ladies' auxiliary of the room adopted by the auxiliary as its meeting place. It provided the light and heat therefor, partially furnished same and neither charged nor received any rent from the auxiliary. The auxiliary decorated said room and partially furnished it. The auxiliary collected dues from its members to defray expenses incurred by it. Other than as above stated, the auxiliary received nothing from defendant lodge and paid nothing to it for the use and occupancy of said room or for any other purpose. The auxiliary maintained a drill team which performed for the local lodge and at Eagles' conventions.

In February 1952, the auxiliary aided and participated in improvements made by the lodge to the building occupied by it and the furnishings thereof but there is no evidence tending to prove that at any time prior to the time plaintiff was injured the auxiliary had aided or participated in any similar undertakings by the defendant lodge.

The auxiliary, in addition to being accorded by the defendant lodge the privilege of using and occupying the room on the second floor as a meeting place without charge or compensation, was collectively and individually accorded the privilege of attending social functions held by the lodge upon the third floor of its building, together with access to said second and third floors by the stairways leading thereto.

The auxiliary and its individual members were also accorded the privilege of purchasing and consuming drinks and lunches in the bar and grill room upon the first floor of the building in the room provided by the lodge for such purpose together with access thereto through the entrance to said building and the vestibule and doors leading into said rooms upon the first floor of said building.

The plaintiff sustained the injuries of which she complains on December 1, 1947. She had come from her home to the Eagles building where she directly entered the building and ascended the stairway leading from the first floor to the second floor and entered the room used by the ladies' auxiliary as a meeting place. She attended a meeting of the auxiliary then being held in said room, her stated purpose in attending said meeting being the payment of her dues. After the close of the meeting she left the meeting place with the purpose of returning to her home and started down the stairway to the first floor when she slipped and fell on said stairway and sustained the injuries complained of by her. She was not, on said date, present in any other parts of the building than those mentioned and did not purchase any food or drink or attend any social functions or other activity given or sponsored by the defendant lodge.

At the time of plaintiff's injuries there were handrails on both sides of the staircase and the stairway

was well lighted. After plaintiff fell and while still lying on the stairway she looked up the stairway and observed a hole in the metal binding of the step which she believed had been the one upon which her foot had caught causing her to fall; the metal strip being partly separated from the step, turned up and split.

A piano belonging to the auxiliary had been moved from outside the Eagles building through the entrance in the vestibule, up the stairway from the first floor to the second floor and into the meeting room of the ladies' auxiliary several weeks prior to the time the plaintiff sustained her injuries.

Under the factual situation above set forth, it is obvious that under the permission extended by the defendant lodge to the plaintiff to be present upon the premises of the lodge and to use its facilities the plaintiff while on said premises might have the legal capacity of an invitee (business visitor) or a gratuitous licensee (social visitor), depending upon the purpose for which she was on said premises and the portion of said premises upon which she was present.

The status and rights of invitees and licensees are subject to determination by the following rules of law:

"1. In tort law an 'invitee' means a business visitor, that is, one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest. A social guest is not a business visitor and is not an 'invitee' as that term is used in tort law.

"2. A host is not an insurer of the safety of a guest while upon the premises of the host and there is no implied warranty on the part of a host that the premises to which a guest is invited by him are in safe condition.

"3. A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary

care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *Scheibel* v. *Lipton,* 156 Ohio St., 308, 102 N. E. (2d), 453.

"A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." 2 Restatement of the Law of Torts, 893, Section 330.

"A gratuitous licensee is any licensee other than a business visitor as defined in section 332." 2 Restatement of the Law of Torts, 896, Section 331.

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them." 2 Restatement of the Law of Torts, 897, Section 332.

"*Comment: a. Distinction between possessor's duty to gratuitous licensee and duty to business visitor.* There is only one particular in which one who holds his land open for the reception of business visitors is under a greater duty in respect to its physical condition than a possessor who holds his land open to the visits of a gratuitous licensee. The possessor has no financial interest in the entry of a gratuitous licensee; and, therefore, such a licensee is entitled to expect nothing more than an honest disclosure of the dangers which are known to the possessor. On the other hand, the visit of a business visitor is or may be financially beneficial to the possessor. Such a visitor is entitled to expect that the possessor will take reasonable care to

discover the actual condition of the premises and either make them safe or warn him of dangerous conditions. As stated in §342, a possessor owes to a bare licensee only the duty to exercise reasonable care to disclose to him dangerous defects which are known to him and are likely to be undiscovered by the licensee. Toward the business visitor, the possessor owes the additional duty to exercise reasonable care to make the land safe for the reception of his visitor or, at the least to ascertain the actual condition of the land so that by warning the visitor thereon, he may give the visitor an opportunity to decide intelligently whether or not to accept the invitation or permission.'' 2 Restatment of the Law of Torts, 939, Section 343. Comment *a*.

Considering the status of plaintiff at the time of her injuries in the light of the rules of law above mentioned, it is clear that she did not have the legal capacity of a business invitee as she was not on the lodge premises for any purpose in which the possessor of the premises had a beneficial interest and she was not upon a part of said premises in use for any purpose in which the possessor of the premises had any beneficial interest and consequently had merely the legal capacity of a social guest or gratuitous licensee. To her the defendant lodge owed the duty only of (1) exercising ordinary care not to cause injury to her by any act of the lodge or by any activities carried on by the lodge while she was a guest on the premises, and (2) to warn her of any condition of the premises which was known to the lodge and which one of ordinary prudence and foresight in the position of the lodge should reasonably consider dangerous, if the lodge had reason to believe that plaintiff did not know and would not discover such dangerous condition.

While the petition charges that plaintiff had the

legal capacity of an invitee the other allegations of the petition and the evidence received without objection upon the trial is such as to have required the court to submit the cause to the jury upon plaintiff's right to recover as a gratuitous licensee, there being evidence in the record tending to prove that plaintiff had such right.

As under the pleadings and the evidence a cause of action was shown requiring the submission of the cause to the jury the trial court did not err in over-ruling the motion of defendant lodge to direct a verdict in its favor as contended in the first assignment of error. This assignment of error is therefore without merit.

There is a serious question as to the sufficiency of the petition herein by reason of the failure of the plaintiff to make the allegations necessary to sue the members of the lodge as a class in conformity with the requirements of Section 11257, General Code, as mentioned in the opinion of the Supreme Court of Ohio in the case of *Damm* v. *Lodge,* 158 Ohio St., 107, 107 N. E. (2d), 337, but counsel for the defendants stated in open court that they did not wish to make any objection to the form of the petition or as to the judgment in the cause not being binding on defendant lodge and the members thereof by reason of such infirmity, so this court does not consider this question but suggests that in the event of a new trial the petition be amended to conform with the requirements of Section 11257, General Code, above referred to.

We shall now consider the other assignments of error.

2. As appears from the discussion under assignment of error number one, there is no evidence in the record that plaintiff had the legal capacity of an invitee and consequently the court erred in submitting

the question to the jury as to whether plaintiff was an invitee. This error requires the reversal of the judgment of the trial court and the remanding of the cause for a new trial with instructions to the trial court that in the absence of evidence tending to prove that plaintiff had the legal capacity of an invitee at the time of her injury the court instruct the jury that the plaintiff was a gratuitous licensee on the premises of the lodge and define the duties of the defendant lodge to her in such capacity.

3. As under the evidence in the case and as a matter of law the plaintiff at the time of her injuries had the legal capacity of a gratuitous licensee as hereinabove mentioned the court erred in the particulars specified in the third assignment of error. This error will be corrected by the reversal of the judgment and the remanding of the cause to the trial court as prescribed in the disposal of assignment of error number two.

4 and 5. As the plaintiff was a gratuitous licensee and not an invitee and the cause was submitted to the jury as if the plaintiff was an invitee the verdict of the jury is contrary to law. Upon this submission the verdict is also against the manifest weight of the evidence. These errors are of such a character as to require the setting aside of the verdict and the reversal of the judgment.

6. The court charged the jury that the defendant lodge owed a duty to plaintiff as an invitee, while the defendant lodge owed the plaintiff a duty as a gratuitous licensee only. The court erred in this respect and this error is of such a character as to require reversal of the judgment.

7. While the petition charged actual knowledge of defects in the stairway, the evidence upon this point, which was admitted without objection, tends to prove constructive knowledge and constructive knowledge

was sufficient to charge the defendant lodge with liability. This situation warranted the charge as given.

For the errors hereinbefore found and discussed the verdict of the trial court will be set aside and the judgment will be reversed and the cause remanded for a new trial and further proceedings according to law, with instructions as hereinbefore set forth, and it is adjudged that the plaintiff, appellee herein, pay the costs of this appeal.

*Judgment reversed.*

MIDDLETON, P. J., and FESS, J., concur.

FESS, J., of the Sixth Appellate District, sitting by designation in the Third Appellate District.